# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

_____

**UNITED STATES OF AMERICA,**          )

**v.**          )          **Docket No. 22cr10355-NMG**

**PANKAJ MERCHIA**          )

_____ )

## MOTION TO COMPEL GOVERNMENT TO PRODUCE DOCUMENTS REGARDING PAYMENTS MADE FOR PATIENT 1 WITH INCORPORATED MEMORANDUM OF LAW

NOW COMES the defendant, through counsel, and respectfully moves this Honorable Court to Order the Government to produce any and all documents related to Patient 1 and all related matters described in Count 2 of the Superseding Indictment, ("SI").  (ECF#60).  In support thereof, counsel states the following:

1. To date the Government has provided more than 58,000 pages with additional discovery provided today.

2. The SI at Count 2 charges money laundering which is predicated at ¶23.a. which states:

> "Patient 1 was a patient of MERCHIA in or about 2009 and in or about 2010.  Despite the fact that MERCHIA had not treated or seen Patient 1 since in or about 2010, he nevertheless billed Patient 1 's new insurance canier, Health Insurer 2, for sleep-related services and devices in 2016-2018.  As a result of these fraudulent claims, MERCHIA received over $193,000 in payment from Health Insurer 2."

3.  Page 5 of Patient 1's Grand Jury Testimony states:

A      Yes. The morning after the sleep study, I received
a BiPAP machine.

Q      And for the sleep study and receiving the BiPAP
machine the next morning, were you meeting with Dr. Merchia
himself or somebody else within his office?

A      It was Dr. Merchia at that point.

Q      And what was your impression of Dr. Merchia?

A      I thought that he was very bright, and he had a
real passion for helping people with sleep disorders. He
talked about why he went into that particular field.

Q      And so, you took that BiPAP machine home with you
that day. Is that right?

A      Yes.

Q      Did you use the BiPAP?

A      Yes. Every day.

4. Page 8 of Patient 1's Grand Jury Testimony states:

> Q    Is 2018 when you logged into your United
> Healthcare?
>
> A    Yes. Yes.
>
> Q    And when you looked at the claims that were being submitted, what were they claims for?
>
> A    So, I don't recall exactly what the claims were for. But there were claims from him, Dr. Merchia, and they were various dates which would indicate to me anyway that I would have gone to that office on those dates.
>
> Q    And just to be clear, you did not go to the office, Dr. Merchia's office --
>
> A    No.

4. **In a nutshell, SI at Count 2 alleges that funds received from Health Insurer 2 (United HealthCare) for Patient 1 during 2016-2018 were criminally derived because the funds were paid for office visits that allegedly never occurred.**

5. Defense Counsel has requested the government produce documents for all payments made by Health Insurer 2 for the years 2016-2018.

6. The government has not produced documents responsive to this request.

7. Defense Counsel believes that a review of these requested documents will demonstrate that:

a. no office visits were billed or paid during 2016-2018.

b. payments made during 2016-2018 were only for the main component of the BiPAP machine which Patient 1 admitted that she had received (this main component is properly billed with HCPCS code E0470)

c. the claims paid during 2016-2018 were **not fraudulent**.

8. Defense Counsel has also requested the government for documents with the names of all insurers Patient 1 has had since 2009 when she first saw Dr. Merchia.

9. The government has not responded to this request.

10. Defense Counsel believes that subpoenas to these insurers will demonstrate that despite Patient 1 having received component E0470 on April 13, 2009 and this component being billed to her insurers on a monthly basis from 2009 onwards,

a. no payment was ever made to any medical practice or CPAP supply company until September 2017, a full eight years and five months later

b. if a payment was made during this period, it was directly to Patient 1 and that Patient 1 never forward the payment to any medical practice or CPAP supply company

c. explanations of benefits for all payments made by all insurance providers of Patient 1 from 2009 through 2018.

11. See Affidavit of Peter Charles Horstmann, filed herewith.

12. While courts generally do not compel the government to produce records the Government alleges it does not have in its possession the request of such records from the alleged victim's insurance companies and their patients is more within the government's purview.

13. It is more likely that the alleged victim insurance companies and their patients will provide a more thorough and complete record to the Government than responses to defense Rule 17 subpoenas.

14. This request that the government provide records associated with its alleged victim are consistent with the spirit of Rule 17(c) which seeks to limit the risk of victims being harassed by defense subpoenas.

15. The production of this evidence by the government will conserve valuable CJA expenditures by identifying trial witnesses and documents in a timely fashion.

16. Furthermore, current court appointed counsel does not have time to collect this most basic information that it would have been negligent for the Government to not collect, if indeed the Government did not collect it.

17. In summary, defense counsel needs documents that describe the alleged crime with specific claims with codes that were billed and the date of service for which they were billed (the superseding indictment does not) and documents

that support the alleged crime (the truckload of over 60,000 pages of discovery the Government has provided does not[1]).

## ARGUMENT

While it is true that the government is generally not required to produce records it does not possess, it has the discretion to do so and has done so in this case.  However, the government is not always the best arbiter of determining what discovery is necessary for the defense to adequately prepare for trial.  Courts have ordered the advance production of documents.

In 2020, Congress enacted the Due Process Protection Act which was designed to remind prosecutors of their strict obligations under *Brady* and the consequences for a violation of this obligation. Pub. L. No. 116-182, 134 Stat. 894 (2020)(amending Federal Rule of Criminal Procedure 5, which now requires that "[i]n all criminal proceedings ... the judge shall issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the possible consequences of violating such order under applicable law." Fed. R. Crim. P. 5(f)(1)).

---

[1] The USAO numbers provided do not reflect the amount of documents provided since in some cases a single number represents hundred or even thousands of pages of complex spreadsheets.

Here, the government has produced exculpatory evidence as recently as March 11, 2024. However, the defendants are entitled to all of it. The only way for the defendants to ensure that they have received all of the relevant and exculpatory evidence is for the government to produce all of it.

WHEREFORE, the Court is respectfully urged to grant the instant motion.

Respectfully submitted,

Peter Charles Horstmann, Esq.
BBO #556377
450 Lexington Street, Suite 450
Newton, Massachusetts 02466
(617) 519-9011
*pete@horstmannlaw.com*

Attorney for Defendant Pankaj Merchia

## CERTIFICATE OF SERVICE

I, Peter Charles Horstmann, Esquire, hereby certify that on March 14, 2024, I have served an electronic copy of the instant motion upon all counsel of record through the ECF filing system including AUSA Evan Panich, Office of the United States Attorney, J.W. McCormack Building & Courthouse, 1 Courthouse Way, Boston, MA 02110.

Peter Charles Horstmann, Esq.